# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH HOAGLAND,<br><br>                Plaintiff,<br><br>    v.<br><br>AXOS BANK,<br><br>                Defendant. | Case No. 19-cv-00750-BAS-JLB<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR STAY**<br><br>**[ECF No. 38]** |

Defendant moves to dismiss the First Amended Complaint (First Am. Compl. ("FAC"), ECF No. 34) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiff's conclusory allegations that texts were sent using an automatic telephone dialing system ("ATDS") are insufficient to state a claim under the Telephone Consumer Protection Act ("TCPA"). (Mot. to Dismiss, ECF No. 38.) Alternatively, Defendant moves this court to stay the case pending the possible promulgation by the Federal Communications Commission ("FCC") of regulations implementing the TCPA. (Mot. to Stay, ECF No. 38.)

Pursuant to Civil Local Rule 7.1(d)(1), the Court finds the matter suitable for determination on the papers and without oral argument. The Court **DENIES** both Motions.

## I.    STATEMENT OF FACTS

Plaintiff alleges he received "numerous nonconsensual autodialed" text messages from Defendant Axos Bank in the past four years. (FAC ¶¶ 1, 8, 14.) Plaintiff claims

- 1 -

19cv750

Defendant used ATDS to make those calls. (FAC ¶¶ 21, 23–25.)

Specifically, Plaintiff alleges that "no human being physically dialed each digit of Plaintiff's . . . telephone number[]" and that "the calls were made automatically pursuant to a computer program that was programmed to automatically decide what phone numbers to call when, and what to say." (FAC ¶ 24.) The texts "were sent through an online-hosted CallFire, Inc. system." (FAC ¶ 22.) "Alternatively, the Axos texts were sent using a system similar to CallFire, insofar as it is used to automatically blast thousands of text messages to individuals' cell phones, without human intervention." (*Id.*)

Plaintiff details at least one call received via an ATDS. It read: "$11.28 charge was made to Emerald Card 1533. Avail bal $1.26. Full access at hrblock.com/emerald card. Reply STOP to cancel." (FAC ¶ 17.)[1] Plaintiff claims "Axos has sent Plaintiff dozens such or similar text messages." (FAC ¶ 16.)[2]

Unfortunately, Plaintiff had no credit card with either Axos Bank or H&R Block. His attempts to notify Defendant that the texts were going to the wrong person were unavailing, and his requests that the texts stop were ignored. (FAC ¶ 18.)

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

---

[1] The paragraphs in the FAC appear to be mis-numbered. There are two paragraphs labeled 16 and two paragraphs labeled 17. This reference is to the first paragraph labeled 17.
[2] Referencing the second paragraph 16.

544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (alteration in original)). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendant[] ha[s] violated the…laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

### B. Motion to Stay

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). This power to stay proceedings includes the discretion to grant stays "pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979).

The inherent power of district courts to grant stays "calls for the exercise of sound discretion," by which a court must weigh the competing interests of the parties that would be affected by a grant or denial of a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009) (citing *Clinton v. Jones*, 520 U.S. 681, 708 (1997)).

The Ninth Circuit has identified three competing interests that should be evaluated in deciding whether to grant a motion to stay: (1) the hardship or inequity upon the non-moving party that would result from granting the stay; (2) the hardship or inequity upon the moving party being required to go forward after denial of the stay; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law that could be expected to result from a stay. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005).

## III. ANALYSIS

### A. Motion to Dismiss

Defendant moves to dismiss pursuant to Rule 12(b)(6) arguing that Plaintiff makes insufficient allegations to support the conclusory allegations that the complained-of texts were sent using an ATDS. Under the TCPA, 47 U.S.C. §227(a)(1), a defendant is prohibited from making calls using an ATDS except in certain circumstances. An ATDS is defined as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator." *Id.*

The Ninth Circuit has found this definition to be ambiguous on its face, thus requiring a look at the structure and context of the TCPA. *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1051 (9th Cir. 2018). "Congress intended to regulate devices that make automatic calls." *Id.* Thus, the Court concluded the statutory definition of an ATDS "is not limited to devices with the capacity to call numbers produced by a 'random or sequential number generator,' but also includes devices with the capacity to dial stored numbers automatically." *Id.* at 1052. Furthermore, the Court rejected the argument that the device must be fully automatic without any human intervention whatsoever to be an ATDS. "Congress made clear that it was targeting equipment that could engage in automatic *dialing*, rather than equipment that operated without any human oversight or control" *Id.* (emphasis original).

The *Marks* case was recently reinforced in *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019). In that case, the defendant argued that it stored numbers only to be called

reflexively. The calls were generated as a programmed response to external stimuli outside of defendant's control, that is, the messages were sent when there appeared to be unauthorized activity on an individual's Facebook account. The Court found no difference between calls made actively and those made reflexively. *Id.* The TCPA's "animating purpose" is "protecting privacy by restricting unsolicited, automated telephone calls." *Id.* Since Plaintiff alleged receiving calls that were automated, unsolicited and unwanted, the Plaintiff's allegations were sufficient.

As this Court has previously noted, courts facing a motion to dismiss on the grounds that the allegations of use of an ATDS are insufficient have taken two approaches. *Olmos v. Bank of Am., N.A.,* 15-cv-2786-BAS-BGS, 2016 WL 3092194, at *2 (S.D. Cal. June 1, 2016) (citing *Maier v. J.C. Penney Corp.*, No. 13-cv-163-IEG (DHB), 2013 WL 3006415, at *3 (S. D. Cal. June 13, 2013)). "Under the first approach, courts allow a plaintiff to make minimal allegations at the complaint stage, permitting discovery to proceed on the issue of the use of an ATDS, because the information is in the sole possession of the defendant." *Id.* (citing *Jiffy Lube Int'l, Inc. v. Text Spam Litig.*, 847 F. Supp. 2d 1253, 1260 (S.D. Cal. 2012)). "Under the second approach, courts require more than the mere statutory language, requiring some factual allegations that would lead to the inference that an ATDS was used." *Id.* (citing *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010)). However, "[e]ven under this second approach, Plaintiffs are generally allowed 'to rely on indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages, to raise an inference that an . . . [ATDS] was utilized. Prior to the initiation of discovery, courts cannot expect more.'" *Id.* (quoting *Maier*, at *3).

Under either approach, Plaintiff's allegations in the FAC are sufficient. Plaintiff clearly alleges that the texts received were made via an ATDS. (FAC ¶¶ 21, 23–25.) Plaintiff further alleges that the calls were made "through an online-hosted CallFire, Inc. system" or "a system similar to CallFire" "used to blast thousands of text messages to individuals' cell phones, without human intervention." (FAC ¶ 22.)

Furthermore, Plaintiff's description of the texts supports the allegation that it was unlikely they were made by an individual. First, the quoted text appears to be made confirming a charge to the credit card of $11.28. It seems unlikely on its face that a human employee at a large bank like Axos Bank sent a text every time an individual charged an amount on one of the Axos bank cards. Additionally, the phrase "Reply STOP to cancel" suggests, although not definitively, that the text was not being sent, nor would any replies be received, by a human being.

At the motion to dismiss stage, "requiring plaintiff to know the specific technology utilized at this stage is impractical." *Metten v. Town Sports Int'l, LLC*, No. 18-cv-4226 (ALC), 2019 WL 1299939, at *3 (S.D.N.Y. March 21, 2019). In this case, the allegations are sufficient at the motion to dismiss stage to suggest the inference that the texts were generated automatically. Thus, defendant's motion to dismiss is **DENIED.**

### B. Motion to Stay

Defendant argues the case should be stayed while the FCC considers promulgating regulations further defining an ATDS and determining the proper approach to calls made to a phone number previously assigned to a person who had given consent but since reassigned to another nonconsenting person.

The TCPA vests the FCC with the responsibility to promulgate regulations implementing the TCPA. *ACA Int'l v. Fed. Comm'c Comm'n*, 885 F.3d 687, 693 (D.C. Cir. 2018). In keeping with this power, in 2015, the FCC clarified what devices qualify as ATDS. *Id.* at 693–694. The Commission also promulgated regulations as to whether the TCPA is violated when a call is made to a consenting number that has been reassigned to a nonconsenting party. Under the Hobbs Act, these regulations were subject to review by the District Court for the District of Columbia. *See Marks*, 904 F.3d at 1049.

In *ACA International*, the D.C. Circuit set aside the FCC's efforts to clarify the types of calling equipment that qualify as an ATDS as "unreasonably expansive." 885 F.3d at 692. The court also vacated the agency's approach to reassigned numbers as "arbitrary

- 6 -

19cv750

and capricious." *Id.* Thus, the Ninth Circuit properly went back to the statute anew to determine the definition of an ATDS. *See Marks*, 904 F.3d at 1050.

Defendant would have this Court stay these proceedings while the FCC considers promulgating new regulations. Even assuming the FCC did issue new rulings, these rulings would once again be subject to review under the Hobbs Act. Frankly, both parties would be damaged by this approach. There is no time limit as to when or whether the FCC will promulgate such regulations or when or whether the courts will then review these newly promulgated regulations. Thus, the stay could be an indefinite one, leading to a loss of evidence and memories and miscarriage of justice for all involved.

Furthermore, it is not clear to the court that the promulgation of regulations, if they occurred, would simplify or save judicial resources. First, the Ninth Circuit has clearly ruled on the definition of an ATDS. This Court is bound by that ruling, even when faced with a possible contradictory regulation. Second, the possibility of a contradictory regulation is so speculative that it does not warrant the stay. Finally, it is not at all clear that any regulation dealing with nonconsenting parties would be applicable to this case. The FCC has primarily focused on reassigned numbers as opposed to numbers simply called in error. It is unclear at this stage of the proceedings that any regulation would even be applicable to this case.

Ultimately, the fact that there is no clear timeline, and, in fact, there may not be new regulations promulgated by the FCC in the near future, leads the court to conclude that a stay at this stage would be inappropriate.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Motion to Dismiss and the Motion to Stay (ECF No. 38). Defendant is directed to file an Answer to the FAC no later than **February 20, 2020**.

**IT IS SO ORDERED.**

**DATED: February 6, 2020**

Hon. Cynthia Bashant
United States District Judge